## Case No. 5,886.

### HABRICHT v. ALEXANDER.

[1 Woods, 413.] [1]

Circuit Court, W. D. Texas. April Term, 1867.

CONTRACT BETWEEN ALIEN AND CITIZEN OF RE-
BELLIOUS STATES—PUBLIC POLICY.

A contract for the purchase of cotton made during the late war of the Rebellion, by a subject of the king of Norway and Sweden, domiciled in the city of New York, with a citizen of the state of Texas, actually residing therein at the date of the contract, was void as against public policy and the laws of war and the spirit of the legislation of congress.

Heard on demurrer to petition.

Amos Morrill, for plaintiff.

O. M. Roberts and J. H. Reagan, for defendant.

DUVAL, District Judge.    The petition shows that the plaintiff, being a subject of the king of Sweden and Norway, and a citizen of that kingdom, did, on the 10th day of August, 1863, while temporarily residing in the city and state of New York, purchase of, and receive a conveyance from, C. C. Alexander, then a citizen of Fannin county, state of Texas, of 4,825 bales of cotton, weighing 2,313,927 pounds, for and in consideration of the sum of $231,392.70, alleged to have been paid therefor.    That afterwards the said Alexander fraudulently took and carried away from the possession of said plaintiff the said cotton, and converted the same to his own use, to the damage of plaintiff, $300,-000.    The petition further alleges that said Alexander afterwards died, leaving a last will and testament, and prays judgment against the executors thereof for his damages aforesaid.    By an amended petition, filed the day before this cause was called for trial, the plaintiff alleges that after the purchase of said cotton by him, the price thereof greatly enhanced in value, and that at the time of the wrongful conversion thereof by said Alexander, the same was worth one dollar per pound, and had not been worth less than fifty cents per pound since then.    To this petition and amendment, the defendants interposed a general demurrer, and set forth, under the same, four special grounds, only two of which I will particularly notice.    The first is, that the purchase of said cotton, as alleged, was a violation of the laws of the United States, and the proclamation of the president interdicting all trade and commerce between the citizens of the United States and of the rebel states and between persons residing and being within said rebel states, and all persons in the United States not native or naturalized citizens thereof.    Second, that said contract and purchase was in violation of the public policy of the United States.

An act of congress, passed July 13, 1861 (12 Stat. 257, § 5), authorized the president of the United States to prohibit all commercial intercourse by and between the citizens of the insurrectionary states, and the citizens of the rest of the United States, as being unlawful.    In pursuance of this act the president did, on the 16th day of August, 1861 (12 Stat. 1262, Append.), issue his proclamation, declaring that the inhabitants of certain states (Texas therein included) were in a state of insurrection against the United States, and that all commercial intercourse between them and the inhabitants thereof, and the citizens of other parts of the United States, was unlawful, and should so remain, until such insurrection should cease or be suppressed; and, that all goods and chattels, wares and merchandise, coming from any of said states (without special license) should be forfeited to the United States.    My opinion is that under this law and proclamation, the contract in question must be regarded as unlawful and void.    But apart from them, this would still be my opinion upon generally recognized principles of international law.

When war exists between sovereign and independent nations, it is now acknowledged as causing, of itself, an interdiction to all trade and commerce (including private contracts) between their respective citizens or subjects.    At this day, this seems to be a universal principle of law, recognized and acted upon by all of the great civilized powers in the world.    It results from the nature of war itself, even as softened and ameliorated by the humanity and civilization of modern times.    No other branch of law has been so rapidly progressive, or has more surely marked the advancement of the human race in civilization and enlightenment, as that of international law.    But while this is so, no surer or more certain principle exists under this national code, than the one that all private contracts, made between the subjects of the two belligerents, are unlawful, without special license from the proper authority.

It is contended, however, by the learned counsel for the plaintiff, that the contract set out in the petition was lawful, because the prohibition then existing only applied to citizens of the United States engaged in war against each other.    And for proof of this, the act of congress of July 2, 1864, (13 Stat. 376, § 4), is relied upon.    It is only by this act that the provisions and prohibitions of the act of July 13, 1861, are expressly declared to apply to all persons in the United States, not native or naturalized citizens thereof.    And hence, it is argued that, until this last act was passed, foreigners domiciliated or temporarily residing in the United States could lawfully trade and hold commercial intercourse with the inhabitants of the insurrectionary states.    To this proposition I cannot assent.    If this were so, it seems to me, that the whole policy of the restriction as to trade and intercourse would be defeated and rendered nugatory.    If foreigners in the loyal states, prior to the 2d of July, 1864,

---

[1] [Reported by Hon. William B. Woods, Circuit Judge, and here reprinted by permission.]

could make contracts, trade, etc., with the people of the insurrectionary states, then the door was opened to vast frauds upon the national policy. The object of the prohibition to commercial intercourse was, obviously, to deprive the rebel states of the power and means to carry on the war. If citizens and subjects of foreign countries, temporarily resident in the United States, could carry on this trade and intercourse, they could easily have become the mediums or channels through which thousands of citizens of the United States would have been glad to use their capital in such traffic, and who would have placed means in the hands of such foreigners for that purpose. It is my opinion that the act of congress of July 13, 1861, and the president's proclamation of the 16th August, 1861, were only declaratory of a well recognized principle of international law, which would have controlled and been in full force without them. And such, I think, was also the case as respects the act of July 2, 1864.

The plaintiff's counsel frankly stated, in his argument, that if the plaintiff had been a resident citizen of New York, he would not have brought this action. Now, I am unable to see upon what principle of law or public policy a foreigner, residing in the United States during the war, should have a right to trade and contract with the enemies of the government, when the same right was denied to citizens of the United States. A foreigner, domiciliated in a country and receiving the protection of its flag, is subject to the same prohibitions and restrictions as to trade and intercourse with the enemies of such country, in time of actual war, as attached to her own citizens. This I believe to be a well established principle of international law, and one that is essential to the security of every nation when engaged in war. That a war existed here, no one will deny. It is true, as I believe, that the Confederacy, attempted to be formed by the rebel states, was never even a de facto government. It certainly was never recognized as such by the government of the United States. But it is equally certain that the inhabitants thereof were regarded as belligerents, so far as the actual necessities and exigencies of the war made it necessary. They were enemies to the government of the United States, as was held by the supreme court in the prize cases, and the same rules and regulations of international law, as regarded trade and intercourse with them during the existence of the war, prevailed and operated as if they had been citizens of a foreign power engaged in war with the United States.

But there is another consideration which induces me to think that the contract now declared upon was unlawful. By act of March 3, 1863 [12 Stat. 820], passed prior to the date of said contract, it was provided that all property coming into any of the United States from any of the insurrection-

ary states, through or by any other person than an agent duly appointed under the provisions of that act, or under a lawful clearance from the treasury department, should be subject to confiscation to the use of the government of the United States. This is certainly a legislative recognition on the part of congress that it was then unlawful for any person in the United States to purchase or trade for property in the rebel states. If such property was subject to confiscation, it must have been on the ground that it was illegally acquired. If the cotton, which formed the subject matter of the contract in this case, had been seized by the authorities of the United States it would certainly have been subject to confiscation under this act. This would not have been the case if the plaintiff could legally have contracted for its purchase.

In no view, which I have been able to take of the subject, can I see how the petition can be regarded as not obnoxious to this ground of demurrer. As my opinion on this point must be decisive of the whole case, so far as this court is concerned, I shall say nothing of the other special grounds of demurrer, except that, in my opinion, the claim sued upon, and as set forth in the petition, should appear to have been sworn to and presented to the executors according to law. It was not such an unliquidated claim as required the intervention of a jury to ascertain the amount due, as claimed under the petition. Believing that the contract, as set forth by the plaintiff, and now sought to be enforced, was contrary to public policy and international law, as well as to the laws of the United States, I must sustain the demurrer and dismiss the action.